MARSHALL COUNTY TAX AWARENESS COMMITTEE, David A. and Norma Jean Good, Dorothy Starr, Dennis Large, Robert Clark and Michael Bernero, Appellants (Plaintiffs Below),

v.

Jan Allen QUIVEY, Marshall County Auditor and Plymouth Community School Corporation, Appellees (Defendants Below).

No. 50S05–0212–CV–636.

Supreme Court of Indiana.

Dec. 26, 2002.

John R. Price, Bruce A. Stuard, Indianapolis, IN, Attorneys for Appellants.

Joseph R. Morris, Plymouth, IN, Gary J. Dankert, Indianapolis, IN, Attorneys for Appellees.

## ON PETITION FOR TRANSFER

BOEHM, Justice.

This case involves a public lawsuit to enjoin a school corporation from issuing bonds to pay for building improvements. The trial court concluded that the plaintiffs in this case presented no "substantial issues" and ordered them to post a $1,000,000 bond or have their case dismissed. The plaintiffs appealed that decision to the Court of Appeals, but before the Court of Appeals heard the merits of the case this Court granted the school corporation's petition to transfer pursuant to Appellate Procedure Rule 56. We hold that the trial court abused its discretion when it found the plaintiffs had not presented a "substantial issue." We vacate the trial court's order requiring a bond and remand this cause for further proceedings.

### Factual and Procedural Background

The Plymouth Community School Corporation intends to pay for building improvements by issuing bonds in an amount in excess of $25,000,000. The Corporation published notice of its plan on February 8, 2002.

Pursuant to Indiana Code sections 6–1.1–20–3.1 and –3.2, a group of citizens calling itself the "Tax Awareness Committee" initiated a "petition and remonstrance process" to block the project. Signatures of real property owners in the district, both for and against the school's plan, were collected and filed with the County Auditor. Under section 6–1.1–20–3.2, certain requirements must be met in the collecting of signatures, including: (1) the "carriers" (those collecting the signatures) and signers of petitions must themselves be owners of real property within the

school district; (2) the carrier must be a signatory on at least one petition; and (3) after the signatures have been collected, the carrier must swear or affirm before a notary public that the carrier witnessed each signature.

After the signatures have been verified and filed, it is the Auditor's responsibility to certify the number of valid signatures. If the number of valid signatures opposing a plan is greater than those in favor, then "the bonds petitioned for may not be issued or the lease petitioned for may not be entered into." Ind.Code § 6–1.1–20–3.2(6) (1998).

Before either side began collecting signatures, the Auditor and representatives of both the Tax Awareness Committee and the school met to discuss ground rules for the process. The product of that meeting was a "Memorandum of Understanding" signed by all three parties. That document set forth the "Auditor's understanding concerning the Petition and Remon-strance process" and included a provision that persons signing for entities that are property owners should include their titles, e.g., "Mary Doe, President." [1]

After the signatures were collected, the Auditor validated 2,665 of the 3,114 signatures supporting the project, and 2,578 of the 3,151 opposing. Therefore, by the Auditor's calculation, those favoring the plan collected 87 more valid signatures than its opponents were able to assemble.

■ After the Auditor certified the results, the Tax Awareness Committee filed a "public lawsuit"[2] seeking to enjoin the school from moving ahead with its plan. The complaint alleged, inter alia, that the Auditor improperly invalidated signatures that would have carried the day for the opponents.[3] Pursuant to Indiana Code section 34–13–5–7, the school demanded an "interlocutory hearing," in which the issue is whether the plaintiffs' claims present a "substantial issue."[4] If not, the trial

1. The Memorandum included the following paragraphs:

   11. Corporations, limited liability companies, and trusts may sign. The authorized agent of a corporation, limited liability company, trust, or other entity which owners [sic] real estate within the boundaries of the school corporation may sign the Petition or Remonstrance on behalf of the entity. Below the printed name of the entity and after the words, "By" an authorized agent of the entit[y] should sign and indicate his/ or her office or role as for example, "Mary Doe, Pres." Or "John Doe, Partner".

   21. This Memorandum is an attempt to clarify Indiana Code 6–1.1–20–3.2. This Memorandum is not intended to revise, amend or modify the statute and is not an exhaustive recitation of all its provisions. Any conflict between this Memorandum and the statute shall be resolved in favor of the statute.

2. "Public lawsuits" are defined in part as "any action in which the validity, location, wisdom, feasibility, extent, or character of construction, financing, or leasing of a public improvement by a municipal corporation is questioned directly or indirectly, including but not limited to suits for declaratory judgments or injunctions to declare invalid or to enjoin the construction, financing, or leasing." Ind.Code § 34–6–2–124.

3. The complaint also alleged that certain carriers in favor of the school's plan committed several statutory violations in the collection of signatures, that the school's plan was a misuse of public funds, and that Marshall County citizens could not withstand additional taxation.

4. The statute provides that plaintiffs in a public lawsuit must "establish facts that would entitle the plaintiff to a temporary injunction." Ind.Code § 34–13–5–7(b). The phrase "temporary injunction" has been in the statute since 1967, and predates the current Trial Rules which refer to "temporary restraining order" and "preliminary injunction." Ind. Trial Rule 65. This Court has held that under this statute the plaintiffs must demonstrate that there is "a substantial issue to be tried." *Hughes v. City of Gary*, 741 N.E.2d 1168,

court may order that the cause be dismissed unless the plaintiff posts a bond. The requirement to post a bond in public lawsuits is meant to deter "harassing litigation" that can delay legitimate public improvement projects where the mere passage of time can have significant consequences. *Pepinsky v. Monroe County Council*, 461 N.E.2d 128, 131 (Ind.1984). Thus, when a bond is set, it is to be in an amount "found by the judge to cover all damage and costs that may accrue to the defendants by reason of the pendency of the public lawsuit in the event the defendant prevails." Ind.Code § 34–13–5–7(b). The trial court in this case conducted an extensive interlocutory hearing, which included fourteen live witnesses and forty-nine exhibits.

The principal issue on appeal, and a focus of the hearing, is whether the Auditor properly excluded signatures on remonstrances carried and verified by David Good. Good, a member of the Tax Awareness Committee, was a carrier of six remonstrance petitions and collected 129 signatures.[5] In 1995, Good and his wife, Norma Jean, transferred their home in Plymouth, Indiana to a revocable living trust. They are the settlors, trustees, and beneficiaries of the trust. The tax rolls show the owners of the property as "Good, David A. and Norma Jean Good, co-trustees of the David A. Good and Norma Jean Good Rev Living Trust." However, when Good signed the verification form as a carrier of the petitions, he did not indicate that he was signing as a trustee. Based on the provision in the Memorandum of Understanding that trustees "should sign" petitions in their official capacity, the Auditor invalidated Good's signatures as a carrier of the petitions. Having determined that Good's signature as a carrier was invalid, the Auditor also invalidated all 129 of the signatures Good collected.

The trial court issued an order after the interlocutory hearing finding, inter alia: (1) when Good signed as a carrier, he did not indicate that he owned property only as trustee; (2) this omission was despite the Memorandum of Understanding and despite his instruction from the chairman of the Tax Awareness Committee that he should sign as "Trustee"; and (3) the Auditor properly excluded the signatures Good collected because of his failure to show ownership status by omitting his designation as trustee. After addressing and dismissing the other issues raised by the plaintiffs, the court ultimately concluded that the plaintiffs' suit did not raise a substantial question and ordered the plaintiffs to post a $1,000,000 bond or have their case dismissed.

The plaintiffs appealed the trial court's order to post bond. Although Indiana Code section 34–13–5–7(d) directs that appeal of an order to post or deny bond is to be taken to this Court, the plaintiffs filed their appeal in the Court of Appeals. This is consistent with this Court's holding in *Sekerez v. Bd. of Sanitary Comm'rs*, 261 Ind. 398, 399–400, 304 N.E.2d 533, 533–34 (1973), that our Rules of Procedure, not the Indiana Code, govern which cases this Court hears on direct appeal. Pursuant to Appellate Procedure Rule 5(B), appeals

1171 (Ind.2001) (citing *Boaz v. Bartholomew Consol. Sch. Corp.*, 654 N.E.2d 320, 322–23 (Ind.Tax Ct.1995) and *Johnson v. Tipton Community Sch. Corp.*, 253 Ind. 460, 464–65, 255 N.E.2d 92, 94 (1970)).

5. The plaintiffs' second amended complaint alleges Good collected 129 signatures, while plaintiffs' counsel argued at the interlocutory hearing that Good collected 137 signatures. In their brief to this Court, plaintiffs again allege that 129 signatures are at stake. We accept that number. The critical point is whether more than 87 were improperly invalidated.

from interlocutory orders are appealable to the Court of Appeals.[6]

Citing the potential expense from protracted litigation, the school filed a motion in the Court of Appeals requesting an appeal bond from the plaintiffs "pursuant to the Indiana Rules of Appellate Procedure and the Public Lawsuit Statute [Indiana Code section 34–13–5–7(d)(2) ]." On the same day, the school also filed a motion in this Court requesting that we assume jurisdiction over the appeal pursuant to Appellate Procedure Rule 56. That rule provides for transfer to this Court, and the bypass of Court of Appeals review, "upon a showing that the appeal involves a substantial question of law of great public importance and that an emergency exists requiring speedy determination." The school argued that this case met those criteria because the school is unable to sell bonds and proceed with the project as long as litigation is pending. In addition, as the school argued to the trial court, "[i]f bonds are not sold before the end of the year the tax control board does not permit the School to impose a tax levy for the year 2003." On December 5, we granted the school's motion for transfer.

The plaintiffs argue that the trial court abused its discretion in requiring them to post a bond. In the course of this argument, the plaintiffs present six issues, which we consolidate into four: (1) whether the trial court erred when it concluded as a matter of law that David Good had to identify his capacity as a trustee in signing as a carrier; (2) whether all signatures on a petition are disqualified if the signature of the carrier is invalid; (3) whether Indiana Code section 6–1.1–20–3.2 violates

the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution; and (4) whether the Auditor's method of determining which signatures were valid violated the Equal Protection and Due Process Clauses of the Fourteenth Amendment, the First Amendment, and Article I, Section 23 of the Indiana Constitution. Because the plaintiffs satisfy their burden of demonstrating a substantial issue concerning the signatures Good collected, we address only that issue.

## I. Validity of David Good's Signature as a Carrier

When a petition and remonstrance process is undertaken, the State Board of Accounts is responsible for delivering to the County Auditor both petition and remonstrance forms, and instructions for the collection of signatures. Ind.Code § 6–1.1–20–3.2(3). By law, those instructions must include the requirements that:

(A) the carrier and signers must be owners of real property;

(B) the carrier must be a signatory on at least one (1) petition; and

(C) after the signatures have been collected, the carrier must swear or affirm before a notary public that the carrier witnessed each signature.

*Id.* The instruction sheets furnished to the Auditor by the Board of Accounts included additional requirements governing who may sign, and in what form those signatures should be made, but had no specific instruction dealing with signatures by indi-

---

**6.** Appellate Procedure Rule 5(B) states: "The Court of Appeals shall have jurisdiction over appeals of interlocutory orders under Rule 14." The plaintiffs' appeal was proper under Rule 14(C), which governs statutory interlocutory appeals. Because the statute's grant of a right to appeal is consistent with the Appellate Rules, the right to take an interlocutory appeal conferred by section 34–13–5–7(d) is not affected by the holding in *Sekerez* that the court to which the appeal is to be taken is the Court of Appeals.

viduals signing on behalf of trusts or other legal entities.

There seems to be no question that Good is the beneficial owner of real property located in the school corporation, and as trustee is also a record owner. David Good is co-trustee of the "David A. Good and Norma Jean Good Revocable Living Trust," and as such has legal title to the trust's real property, which is located within the relevant school district. The Auditor's records indicated as much. However, Good did not indicate he was the owner of property as trustee, prompting the Auditor to disqualify his signature and the signatures he collected.

We think it was clear enough who Good was and that, as trustee of a revocable trust created by himself and his wife, he was an owner of property within the district. The school argues that the disqualification was proper under Paragraph 11 of the "Memorandum of Understanding" that was agreed to by the Auditor, the school, and the Tax Awareness Committee prior to the gathering of signatures. The plaintiffs point out that Paragraph 11 uses the phrase "should sign" rather than "shall sign" or "must sign." We agree that to the extent the Memorandum purports to impose an inflexible requirement that the capacity of a trustee be shown on the face of the signature, it conflicts with Indiana Code section 6–1.1–20–3.2. That section states that the verification of petitions and remonstrances must be done "in the manner prescribed by the state board of accounts." Ind.Code § 6–1.1–20–3.2(4). This statute does not permit County Auditors to add their own requirements for the verification procedure. Although the Memorandum of Understanding may have indicated that trustees "should" sign in their official capacity, there is no such explicit requirement in section 6–1.1–20–3.2, and there was no such requirement on

the instruction forms provided by the State Board of Accounts. The only rule in the instructions having to do with the content of the signatures stated:

7. All names should be written and printed neatly, and as they appear on the tax records in the Auditor's office as nearly as possible.

By stating that the "names" should be written "as nearly as possible" as they appear on the actual tax records, this instruction requires only substantial, not exact, conformity with those records. Arguably the "name" is only "David Good," even if his title is "trustee." In any event, we think the Board of Accounts intended to allow imperfect identification so long as the signer can be readily identified in the Auditor's records as an owner of real property in the district. The Auditor testified that he had no difficulty identifying the signer "David Good" as the David Good listed in his records as an owner of real property as co-trustee of the "David A. Good and Norma Jean Good Revocable Living Trust." Nor did he have any doubt as to who the carrier was. The signatures on the remonstrance forms Good carried should not have been excluded.

To be sure, procedures are often necessary to the conduct of an orderly election or petition. But in a democracy we strongly favor permitting citizens to exercise their franchise. We sympathize with the school, which has undoubtedly expended significant effort and engaged in exhaustive analysis of its needs before undertaking this bond issue. Nevertheless, Indiana law permits a majority of signatures to defeat a proposal and the plaintiffs here present a substantial issue that they have done that. Signatures that do not violate any statutory or Board of Accounts directive should be counted if it is clear who the property owner is and that the person signing for that property is

authorized to do so. Good's signature on behalf of his trust met those criteria. The Memorandum's provision that persons signing on behalf of entities "should" indicate their titles is not sufficient to override this general principle.

## II. Appeal Bond

As mentioned in Part I, the school filed a motion with the Court of Appeals requesting an order that the plaintiffs file an appeal bond in the amount of $1,000,000. Thirty minutes before this Court filed its order granting transfer, the Court of Appeals ordered the appellants to post an appeal bond of $1,000,000 by the close of business on Friday, December 13. Our order stated, "The appellee's Verified Motion For Appeal Bond remains under advisement," creating an apparent conflict with the Court of Appeals' order.

The school contends that if the plaintiffs fail to post the appeal bond as required by the Court of Appeals' order, this Court should dismiss the appeal. The plaintiffs respond that this Court's granting transfer necessarily vacated the Court of Appeals' order, and that they were not required to post the appeal bond. We disagree with both.

By rule, this Court's granting transfer has the effect of vacating the Court of Appeals' opinions. Ind.App. R. 58(A). However, the Rules of Appellate Procedure do not provide that the orders of the Court of Appeals are also vacated. When this Court assumes jurisdiction, it takes the case as it finds it, including any outstanding orders. Although those orders usually relate to timing of filings, etc., the bond order is in the same category. The plaintiffs did not post an appeal bond by the close of business on December 13. Therefore, the plaintiffs failed to comply with the Court of Appeals' order requiring an appeal bond, and this Court could have dismissed the plaintiffs' appeal as a result.

The plaintiffs proceeded at their own risk in electing not to post a bond or seek to set aside the order of the Court of Appeals. We nevertheless do not dismiss the appeal. We believe that the Court of Appeals' order was contrary to the Appellate Rules. An appeal bond is of a different character from the statutory bond that was at issue in the interlocutory hearing. It is true that Indiana Code section 34–13–5–7(d) purports to permit an appellate court to set "a bond" in an appeal from an interlocutory hearing. It appears that the bond to which the statute refers is a bond of the sort that may be required by the trial court, and not an appeal bond. In any event, as we held in *Sekerez*, the appeal procedures outlined in section 7(d) are trumped by our Appellate Rules. Thus the issue as to the propriety of a bond as a condition to appeal is whether it is permitted by Appellate Rule 18, which governs appeal bonds. That rule is specific that an appeal is permitted without bond except to secure payment of a money judgment. This is consistent with the granting in the Indiana Constitution of an "absolute right" to appeal. Ind. Const. Art. VII, § 6. No money judgment was awarded below. Further, the appellate bond contemplated by section 34–13–5–7(d) seems to turn on a finding that the plaintiffs have presented no substantial question. If we agree with the trial court on that point, we should affirm the trial court's order requiring the posting of a statutory bond. If we disagree, we should reverse that order. In neither case is it appropriate to order an independent appeal bond-i.e., a bond as a condition to appeal of the trial court's finding as to the presence vel non of a substantial question. Accordingly, we do not dismiss this interlocutory appeal for failure to post the bond.

## Conclusion

Because counting the signatures Good collected would put the results of this peti-

tion and remonstrance process in doubt, we hold that plaintiffs have demonstrated a substantial issue that eliminates the need for them to post a bond. The plaintiffs have thus met their burden of demonstrating one substantial issue and are entitled to go to trial on the complaint. We do not address the remaining claims presented. We vacate the trial court's order requiring a bond, and remand this cause for further proceedings.

SHEPARD, C.J., and DICKSON, SULLIVAN, and RUCKER, JJ., concur.