**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Nov 29 2012, 8:48 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**WILLIS E. HUIRAS**
Huiras Law
Indianapolis, Indiana

ATTORNEY FOR APPELLEE:

**MATTHEW J. JANKOWSKI**
Kopka Pinkus Dolin & Eads, LLC
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| MILES OGEA d/b/a MO AUGER INVESTMENTS and MO'S TAVERN, | ) | |
| Appellant-Cross-Claim Defendant, | ) | |
| vs. | ) | No. 18A04-1206-CT-288 |
| KARAMESINES CREDIT SHELTER TRUST, | ) | |
| Appellee-Cross-Claimant. | ) | |

APPEAL FROM THE DELAWARE CIRCUIT COURT
The Honorable John M. Feick, Judge
Cause No. 18C04-0908-CT-12

**November 29, 2012**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**BAKER, Judge**

Andrew Guntle was injured at Mo's Tavern in Muncie while jumping on a trampoline that collapsed. At the time of the incident, a trust owned the property on which the tavern was located. Several years earlier, the tavern's owner, Miles Ogea, had entered into a lease agreement with the trustee, Athanasious C. Karamesines. At that time, however, the property was placed into a different trust, of which Karamesines also served as trustee. As stated above, the property was conveyed from this first trust to the second trust, and the second trust owned the property at the time Guntle was injured.

Guntle brought suit alleging that Ogea and the trust, as owner of the property, were liable in negligence for his injuries. The trust filed a cross-claim, pointing out that its relationship with Ogea was governed by the lease agreement by which Ogea had agreed to hold the first trust harmless and that the second trust, as successor in interest to the first trust, was also protected by this lease agreement. The second trust filed a motion for summary judgment.

After a series of dismissals, the only remaining portion of the trust's motion concerned whether Ogea had to indemnify the second trust. The trial court granted the trust's motion, and Ogea appealed. We hold that because the second trust was a successor in interest to the first trust, Ogea has a duty to indemnify it pursuant to the lease agreement. Consequently, we affirm the decision of the trial court.

### FACTS

On August 3, 2007, Guntle was jumping on a trampoline at Mo's Tavern. The trampoline had been placed on the premises for the use and enjoyment of the patrons.

2

While Guntle was jumping, the trampoline collapsed, and Guntle fell to the ground. As a result of the fall, Guntle sustained a facture to his right wrist and other injuries.

At the time of the incident, the Karamesines Credit Shelter Trust (Shelter Trust) owned the property where Mo's Tavern was located. On March 1, 2006, the Shelter Trust had purchased the property from the previous owner, the Trust Created by Athanasious C. Karamesines (ACK Trust). The sale had been accomplished through Karamesines, who served as Trustee for both the seller of the property, the ACK Trust, and the buyer, the Shelter Trust.

On April 14, 2005, before the sale, Karamesines and Ogea had executed a lease agreement (Lease Agreement) for Mo's Tavern from June 1, 2005, through May 31, 2015. This Lease Agreement designated "Myles Ogea, President Mo Auger Investments" as the lessee of the property. Appellant's App. 105-06. Further, the Lease Agreement provided, in relevant part,

> Lessee hereby releases Lessor from any liability to Lessee or any other person for damage to person or property caused by water, rain, snow, frost, fire, storm or accident, or by breakage, stoppage, or leakage of water, gas, heating or sewer pipes, or plumbing upon, about, or adjacent to said leased premises. Lessee also agrees to defend, indemnify and hold Lessor harmless from any such loss, claim, liability and expenses (including any resulting from the sole negligence of Lessor or Lessor's agents, employees or contractors). Lessee shall at all times maintain liability insurance in such form and in coverages satisfactory to Lessor and provide to Lessor proof that such insurance remains in effect.
>
> ***
>
> The terms and conditions of this lease agreement shall extend to and be binding upon the parties hereto and their respective successors, assigns,

3

heirs, devises and personal representatives, and may be changed only by written agreement signed by the parties hereto. This agreement shall be interpreted in all respects in accordance with the laws of the State of Indiana.

Appellant's App. p. 105-06.

The Lease Agreement bears the signature of Ogea on the line designated for the Lessee. This signature line is followed by a "Personal Guaranty," providing that

> [i]n consideration of the execution of the foregoing lease agreement, I hereby guaranty the due performance by Lessee of all of the covenants and agreements on its part therein contained and the payment of all damages, costs and expenses which by virtue of the said agreement and any extensions, renewals and modifications thereof may become recoverable from it by Lessor.

Id. at 106. This Personal Guaranty is also signed by Ogea and dated April 14, 2005.

After the trampoline incident, Guntle filed a complaint on August 3, 2009, claiming that he had incurred personal injuries and damages while he was a patron at Mo's Tavern. Guntle alleged that the Shelter Trust was the owner of the real estate and that Ogea was the owner and operator of Mo's Tavern and that each was liable in negligence for Guntle's claimed injuries and damages.

On September 28, 2009, the Shelter Trust filed its answer and cross-claim for indemnity. In the cross-claim, the Shelter Trust claimed that at the time Guntle was injured, the relationship between the Shelter Trust and Ogea was governed by the Lease Agreement. The Shelter Trust further claimed that under the terms of the Lease Agreement, Ogea owed a duty to the Shelter Trust to indemnify it with regard to the allegations contained in Guntle's complaint.

4

On September 14, 2011, the Shelter Trust filed a motion for summary judgment. On October 3, 2011, Ogea filed his response to that motion. While that motion was pending, Guntle voluntarily dismissed the Shelter Trust on March 5, 2012. Accordingly, the only remaining portion of the Shelter Trust's motion for summary judgment related to its cross-claim for indemnity.

The Shelter Trust's cross-claim for indemnity was heard on April 27, 2012, and on May 11, 2012, the court entered its order granting the Shelter Trust's motion for summary judgment in all respects. Ogea now appeals.

## DISCUSSION AND DECISION

Ogea argues that the trial court erred by granting the Shelter Trust's motion for summary judgment. Our review of a motion for summary judgment is the same as the trial court; namely, summary judgment is appropriate only where the evidence shows that there are no genuine issues of material fact, and the moving party is entitled to judgment as a matter of law. Wagner v. Yates, 912 N.E.2d 805, 808 (Ind. 2009); see also Ind. Trial Rule 56(C). Additionally, we must construe all factual inferences in favor of the nonmoving party, and all doubts as to the existence of a material issue must be resolved against the moving party. Scribner v. Gibbs, 953 N.E.2d 475, 479 (Ind. Ct. App. 2011).

Ogea essentially argues that the Shelter Trust was not a party to the Lease Agreement and, therefore, is not entitled to indemnity. More specifically, while Karamesines himself is not a party, it was he who executed the Lease Agreement as the Lessor without noting his affiliation with the ACK Trust.

5

Here, at the time that the Lease Agreement was executed on April 14, 2005, the ACK Trust, owned the subject real estate, and Karamesines was its Trustee. And under the terms of the applicable Indiana statute, a Trustee has the power "[t]he power to enter into a lease as lessor or lessee . . . ." Ind. Code § 30-4-3-3(a)(6).

Nevertheless, Ogea insists that Karamesines was required to note his affiliation with the Trust created by him at the time he signed the Lease Agreement. However, Ogea fails to direct us to any authority to substantiate this claim and the Shelter Trust maintains that it was unable to find any authority to support Ogea's claim.

Indeed, we located authority suggesting the contrary. In <u>Marshall County v. Quivey</u>, a local school corporation planned to pay for building improvements by issuing bonds; however, a group of citizens initiated a remonstrance process to block the project. 780 N.E.2d 380, 381 (Ind. 2002). Both those collecting the signatures and the petition's signatories had to be owners of real property within the school district. <u>Id.</u> at 381-82. Numerous signatures were excluded, but the specific issue on appeal was whether David Good's signature should have been excluded. <u>Id.</u> at 383. Good had transferred his property to a revocable living trust, but when Good signed the verification form as a collector of the petitions, he did not indicate that he was signing as a trustee. <u>Id.</u>

On appeal, a panel of this court determined that

[w]e think it was clear enough who Good was and that, as trustee of a revocable living trust . . . he was an owner of property within the district . . . . By stating that the 'names' should be written 'as nearly as possible' as they appear on the actual tax records, this instruction requires only substantial, not exact, conformity with those records.

6

Id. at 385.

Likewise, we also think that in these circumstances, it is clear that Karamesines was the trustee of two trusts, one of which owned Mo's Tavern before it was conveyed to the other trust. Consequently, Ogea's argument that because Karamesines never designated himself as a trustee, the trust is not a party to the Lease Agreement fails.

However, Ogea directs us to Carlson Wagonlit Travel, Inc. v. Moss, in which a panel of this court quoted language stating: "It is well-established that an agent, in order to avoid personal liability, must, at the time of contracting, disclose both the capacity in which he acts and the existence and identity of his principal . . . ." 788 N.E.2d 501, 503 (Ind. Ct. App. 2003) (quoting Brown v. Owen Litho Servs., Inc., 179 Ind. App. 198, 201-02, 384 N.E.2d 1132, 1135 (1979)). Moss involved three couples who had purchased cruise packages from a travel agency for a cruise line that owned the travel agency, but who went bankrupt before their cruise and did not refund their money. Id. at 502. The panel observed that it was evident from "the plaintiffs' own testimony that they knew of United's existence and identity and Carson Travel's role as agent. . . ." Id. at 504. Accordingly, Carlson Travel disclosed the existence and identity of United and its role as an agent for United." Id. at 505.

Ogea's argument misses the mark, insofar as a trust is a fiduciary relationship between the trustee and the beneficiary of the trust. Davis v. Davis, 889 N.E.2d 374, 379 (Ind. Ct. App. 2008). Indeed, there are duties imposed on the trustee by statute, one of

7

which is keeping trust property separate from individual property. Id. at 380. Others include refraining from engaging in self-dealing, failing to maintain accurate accounts, and/or other types of mismanagement. Id. at 381. Consequently, the relationship between the beneficiary and the trustee of a trust coupled with the different facts between the two cases distinguish the instant case from Moss.

Even so, Ogea "falls back on the language contained in certain Requests for Admission issued by the Shelter Trust to Ogea, which contained" a request and response. Appellee's Br. p. 9. Specifically, the Shelter Trust asked Ogea to admit that under the terms of the lease, "A.C. (Chris) Karamesines is designated as Lessor." Appellant's App. p. 79. Ogea's answered that the terms of the lease spoke for themselves and denied the rest of the request. Id. Ogea argues that this exchange "conclusively establish[es] that the contract is between and among A.C. Chris Karamesines and [Ogea]." Appellant's Br. p. 6.

While Ogea is correct that any matter admitted under Trial Rule 36[1] is conclusively established, the Shelter Trust did not admit anything under Trial Rule 36 because it did not receive any Requests for Admission from Ogea. Rather, the Shelter Trust was the party that issued those Requests for Admissions to Ogea. Consequently, if any party was bound by the provisions of Trial Rule 36, it was Ogea and not the Shelter Trust.

---

[1] Indiana Trial Rule 36(B) provides, in relevant part, that, "[a]ny matter admitted under this rule is conclusively established unless the court on motion permits withdrawal or amendment of the admission."

Notwithstanding this conclusion, Ogea argues that there is no evidence of a subsequent assignment from Karamesines to the Shelter Trust. More particularly, Ogea claims that the edit provision in Paragraph 20 of the Lease Agreement is insufficient to confer rights of the Lessor onto the Shelter Trust.

Paragraph 20 of the Lease Agreement provided that:

> The terms and conditions of this lease agreement shall extend to and be binding upon the parties hereto and their respective successors, assigns, heirs, devises and personal representatives, and may be changed only by written agreement signed by the parties hereto. This agreement shall be interpreted in all respects in accordance with the laws of the State of Indiana.

Appellant's App. p. 106. A successor is commonly defined as "one who replaces or follows another." Black's Law Dictionary 1446 (7th ed. 1999).

Here, there is no dispute that subsequent to the execution of the Lease Agreement, the ACK Trust then conveyed that property to the Shelter Trust. Appellant's App. p. 108. Thus, the Shelter Trust became the successor to the ACK Trust and was accorded all of the rights and duties of the Lessor under Paragraph 20 of the Lease Agreement.

Nevertheless, Ogea argues that the Shelter Trust cannot be the successor in ownership because it existed before the execution of the Lease Agreement on April 14, 2005. While the Shelter Trust had been in existence since June 5, 2004, there is nothing in definition of term "successor" or in the common understanding of the word that would require that a successor come into existence simultaneously to or after the time of the event which makes it a successor.

9

In sum, the designated evidence shows that on March 24, 1992, Karamesines created the ACK Trust as Settlor and Trustee. Appellant's App. p. 102. The assets comprising this trust included Mo's Tavern. Id. Then, sometime around April 14, 2005, Karamesines executed the Lease Agreement for Mo's Tavern as Trustee for the ACK Trust. Id. at 103.

In the meantime, on June 5, 2004, Karamesines also became the sole Trustee of the Shelter Trust. Id. On March 1, 2006, Karamesines, conveyed the property on which Mo's Tavern is located from the ACK Trust to the Shelter Trust. Id. This transaction was registered by the Delaware County Recorder on March 6, 2006. Id. at 108. There is no evidence of any further transfer of the property from that date until the time of Guntle's injury on August 3, 2007, indicating that the Shelter Trust remained the owner of the property where Mo's Tavern conducted its business. As such, the plain language of the Lease Agreement required Ogea to defend and indemnify the Shelter Trust with regard to the lawsuit filed by Guntle. See Appellant's App. p. 105-06 (Lease Agreement providing that "Lessee also agrees to defend, indemnify and hold Lessor harmless from any such loss, claim, liability and expenses (including any resulting from the sole negligence of Lessor or Lessor's agents, employees or contractors)"). Consequently, we affirm the decision of the trial court.

The judgment of the trial court is affirmed.

ROBB, C.J., and BRADFORD, J., concur.