In the Matter of Annexation Proposed by Ordinance No. X–01–89, being an Ordinance Annexing Certain Territory Commonly Known as the Northeast Annexation Area to the City of Fort Wayne and to Include same in Councilmanic District No. 2.

CITY OF FORT WAYNE, Appellant
(Respondent Below),

v.

CERTAIN NORTHEAST ANNEXATION AREA LANDOWNERS, Appellees
(Petitioners Below).

No. 02A03–9003–CV–113.

Court of Appeals of Indiana,
Third District.

Dec. 17, 1990.

Rehearing Denied Feb. 12, 1991.

J. Timothy McCaulay, Helmke, Beams, Boyer & Wagner, Fort Wayne, for appellant.

Ralph R. Blume, Blume, Wyneken, Connelly, Jordan & Stucky, Fort Wayne, for appellees.

HOFFMAN, Presiding Judge.

Certain Northeast Annexation Area Landowners (Landowners) remonstrated against annexation of a territory known as the Northeast Annexation Area by the City of Fort Wayne (City). The trial court found that the remonstrance was valid and that the Landowners had standing to challenge the annexation even if the remonstrance were invalid. At the City's request, the trial court certified its orders for interlocutory appeal.

The facts relevant to the appeal disclose that on February 14, 1989, the Common Council of the City passed an ordinance annexing approximately 4,918 acres of land designated as the Northeast Annexation Area. Also on February 14, 1989, the Common Council passed Resolution No. R–06–89 which approved a written fiscal plan for the Northeast Annexation Area. The mayor of the City approved and signed the ordinance and the resolution on February 15, 1989.

On April 25, 1989, the Landowners filed a petition for remonstrance. The City filed a motion to dismiss on June 2, 1989, and the Landowners filed a motion for summary judgment on December 21, 1989. The court held a hearing on the motion to dismiss on January 22, 1990, and denied the motion on February 20, 1990. On February 23, 1990, the court heard arguments on the motion for summary judgment, and on March 5, 1990, granted the motion in part. The court certified its orders for interlocutory appeal on March 12, 1990.

■ The City claims the remonstrance was invalid for lack of a requisite number of signatures representing a majority of the owners of the land in the territory sought to be annexed.[1] Subsection b of IND.CODE § 36–4–3–11, the remonstrance statute, states as follows:

"On receipt of the remonstrance, the court shall determine whether the remonstrance has the necessary signatures. In determining the total number of landowners of the annexed territory and whether signers of the remonstrance are landowners, the names appearing on the tax duplicate for that territory constitute prima facie evidence of ownership. Only one (1) person having an interest in each single property, as evidenced by the tax duplicate, is considered a landowner for purposes of this section."

The parties stipulated that the total number of valid signatures on the remonstrance was 3,859 and that the total number of tax duplicates issued for the annexation area was 8,026. However, the trial court counted owners of multiple parcels of land as only one owner of land, thus reducing the number of owners to 7,220 and giving the Landowners a majority of signatures.[2] Although the last sentence of IND. CODE § 36–4–3–11(b) creates confusion with the rest of the statute as to whether people or parcels should be counted, this Court interprets the sentence to mean multiple owners of a single parcel are to be counted as only one owner. A single owner of multiple parcels, on the other hand, counts as an owner for each parcel; therefore, the total number of owners in the instant case is 8,026 rather than 7,220. Consequently, the Landowners did not have a majority of signatures, and the trial court erred in finding that the remonstrance was valid.

■ The trial court also erred in finding that the Landowners had standing to challenge the annexation even if the remonstrance were invalid. As this Court held in *Environ. Prop. Inc. v. City of Ft. Wayne* (1978), 178 Ind.App. 645, 383 N.E.2d 481, remonstrance "is the *exclusive* manner for persons situated as owners of land to be annexed, to obtain relief." (Emphasis supplied.) *Id.* 383 N.E.2d at 483. The only other method of challenging a city's annexation is a declaratory judgment suit; however, this method is available only to taxpayers of the annexing city. *Montagana v. City of Elkhart* (1971), 149 Ind.App. 283, 271 N.E.2d 475. Moreover, even if an action for declaratory judgment were available to the Landowners, they did not include an action for declaratory judgment in their remonstrance petition nor did they amend the petition to bring such an action. The judgment of the trial court is reversed.

Reversed.

---

1. IND.CODE § 36–4–3–11(a) allows two groups of landowners to remonstrate against annexation: a majority of the owners of the land and owners of more than 75% of the assessed value of the land. The instant parties stipulated that the signatures on the remonstrance did not represent more than 75% of the owners of the assessed value of the land.

2. A majority of signatures for 7,220 owners is 3,611 while a majority of signatures for 8,026 owners is 4,014.

MILLER, P.J., concurs.

GARRARD, J., dissents with opinion.

GARRARD, Judge, dissenting.

I respectfully dissent because I believe the majority has misconstrued the proper application of IC 36-4-3-11 in determining the sufficiency of signatures to support a remonstrance under the first statutory alternative: "A majority of the owners of land in the annexed territory." (The parties have stipulated that the second alternative applicable to the owners of more than 75% of assessed value has not been met.)

Here the parties stipulated that (1) if "landowners" are to be established by counting the number of tax duplicates, there are 8,026; (2) if the number of landowners means that a person owning multiple lots or tracts in the annexed area is only one owner of land, then the number of owners if 7,220; and (3) there were 3,859 valid signatures on the remonstrance.

The majority concludes that the statute should be interpreted to mean that a single owner of multiple parcels should count as a separate owner for each parcel. It then reverses because there were only 3,859 remonstrators which is less than 50% of the 8,026 parcels.[1]

The problem I see in the majority's approach is that it leads to the incongruous result that if A owns fifteen lots and fourteen other parties each own one lot in the proposed annexation area, then A can successfully remonstrate although he is only one-fifteenth (6-2/3%) of the number of owners in the area, and conversely he can defeat any effort by all the other fourteen owners (93-1/2%) to remonstrate against an annexation.

It seems to me that the legislature clearly expressed a contrary intention. It established two bases upon which landowners might remonstrate. Under one a valid remonstrance might be filed by the owners of more than seventy-five percent of the assessed valuation in the area regardless of their numerical proportion of the total number of landowners in the area.

In the alternative, "a majority of the owners of land in the annexed territory" were also to be deemed sufficient to remonstrate. In my view this alternative is intended to apply numerically to the owners in the area. Certainly there is the problem, which the statute separately addresses, of multiple owners of interests in a single piece of property. But I believe the intent of the statute is to count an owner as one remonstrator whether he owns a single parcel or ten different lots. On that basis the trial court correctly determined that the number of landowners against which the number of remonstrators should be matched was 7,220 and that the remonstrance was therefore sufficient. In the language of the statute, the number of *owners* remonstrating constituted a majority of the *owners* in the area sought to be annexed.

I would therefore affirm.

---

[1] Even if I were to accept this view, the case should be remanded for a determination of how many of the 3,859 persons signing the remonstrance were entitled to more than one vote because they owned more than one parcel and the consequent determination of how many valid "votes" were represented.