

FILED

May 15 2015, 9:26 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANTS

Gregory W. Black
Gregory W. Black, P.C.
Plainfield, Indiana

ATTORNEYS FOR APPELLEES

David E. Wright
Kevin D. Koons
Kroger, Gardis & Regas, LLP
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Fight Against Brownsburg Annexation, et al., *Appellants-Plaintiffs,* v. Town of Brownsburg, Indiana, et al., *Appellees-Defendants.* | May 15, 2015 <br><br> Court of Appeals Case No. 32A01-1407-PL-300 <br><br> Appeal from the Hendricks Superior Court <br><br> The Honorable David H. Coleman, Judge <br><br> Cause No. 32D02-1310-PL-109 |

**Najam, Judge.**

## Statement of the Case

[1] This appeal involves the statutory process remonstrators must follow when opposing an annexation ordinance. That process begins with the filing of a remonstrance petition under Indiana Code Section 36-4-3-11(a), which requires in relevant part that the petition: (1) include the signatures of at least sixty-five

percent of the landowners in the annexed territory; (2) be filed within ninety days after the ordinance is published; (3) be accompanied by a copy of the ordinance; and (4) state the reason why the annexation should not take place. Indiana Code Section 36-4-3-11(b) then requires that the trial court determine whether the remonstrance has the necessary signatures. "In determining the total number of landowners of the annexed territory and whether signers of the remonstrance are landowners, the names appearing on the tax duplicate for that territory constitute prima facie evidence of ownership." *Id.* If the court determines that the remonstrance is sufficient, it shall schedule a hearing on the merits of the remonstrance. I.C. § 36-4-3-11(c).

[2] Here, after the Town of Brownsburg ("Brownsburg") introduced an ordinance to annex 4,461 acres north of the town, several affected landowners formed a group called Fight Against Brownsburg Annexation ("FABA") and filed a remonstrance petition with the trial court. Brownsburg moved to dismiss the petition under Trial Rule 12(B)(1) and 12(B)(6), and, following a hearing, the trial court dismissed the remonstrance petition for lack of subject matter jurisdiction. In this appeal, we consider whether the trial court erred both when it dismissed the petition under Trial Rule 12(B)(1) and when it concluded that FABA had failed to obtain a sufficient number of signatures in support of its remonstrance petition.

[3] We reverse and remand for further proceedings.

## Facts and Procedural History

[4] On March 7, 2013, the Town Council of Brownsburg ("Town Council") introduced Annexation Ordinance Number 2013-06 ("the annexation ordinance"), which proposed the annexation of 1,193 parcels located on 4,461 acres north of Brownsburg. The Town Council also adopted a fiscal plan for the annexation on that date. On April 9, FABA began gathering signatures for a remonstrance petition.[1] On May 16, the Town Council held a public hearing on the annexation plan and held additional public hearings regarding zoning issues in June. On July 11, the Town Council amended the fiscal plan and adopted[2] the annexation ordinance.

[5] On October 7, FABA filed a written remonstrance and petition for declaratory judgment in the trial court. Attached to the remonstrance, FABA included the signatures of the owners of 808[3] out of the 1,193 parcels to be annexed, or approximately sixty-seven percent of the owners of land in the annexed territory. Brownsburg moved to dismiss the remonstrance for lack of subject matter jurisdiction under Trial Rule 12(B)(1) and failure to state a claim upon

---

[1] Each landowner signed an individual document entitled "Petition Remonstrating Against the Annexation into the Town of Brownsburg." Appellees' App. at 168. For ease of discussion, however, we refer to a single remonstrance petition.

[2] Indiana Code Section 36-4-3-7 provides that, after a municipality adopts an annexation ordinance, it must publish the ordinance.

[3] In its brief on appeal, Brownsburg notes that FABA had obtained a total of 842 signatures. Brownsburg surmises that FABA uses the 808 figure in its brief on appeal because FABA is "apparently discounting 34 petitions that the Town challenged on other grounds but are numerically insignificant to the outcome and thus are outside the scope of the trial court's dismissal and this appeal." Appellees' Br. at 15 n.4.

which relief can be granted under Trial Rule 12(B)(6). In particular, Brownsburg alleged that FABA had not obtained the signatures of sixty-five percent of affected landowners as required by statute. In relevant part, Brownsburg claimed that FABA was required to obtain the signatures of every co-owner of parcels owned by more than one person, which it had failed to do, and that FABA had obtained signatures prior to the adoption of the annexation ordinance, which, Brownsburg alleged, was in contravention of the statutory scheme.[4] Following a hearing, the trial court dismissed the remonstrance petition for lack of subject matter jurisdiction under Trial Rule 12(B)(1). This interlocutory appeal ensued.[5]

## Discussion and Decision

### *Introduction*

[6]     The annexation of land by municipalities is governed by [Indiana Code Section] 36-4-3-1 to [Indiana Code Section] 36-4-3-22. *City of Muncie v. Lowe*, 705 N.E.2d 528, 530 (Ind. Ct. App. 1999), *trans. denied*. Generally, the annexation process formally begins when a municipality adopts an ordinance annexing territory pursuant to either [Indiana Code Section] 36-4-3-3 or [Indiana Code Section] 36-4-3-4. *Id.* The legislative adoption of the ordinance is followed by an opportunity for remonstrance by affected landowners and judicial review. *City of Hobart v.*

---

[4] In total, Brownsburg alleged in its motion to dismiss that 627 of the 808 signatures in support of remonstrance were invalid, including 593 that Brownsburg labeled as "Combined premature signatures & signed by fewer than all owners." Appellants' App. at 62.

[5] The trial court concluded that the motion to dismiss did not address FABA's petition for declaratory relief, and, thus, the court found that that claim survived the dismissal of the remonstrance petition. FABA obtained certification of this interlocutory appeal pursuant to Indiana Appellate Rule 14(B).

> *Chidester*, 596 N.E.2d 1374, 1375 (Ind. 1992).  A remonstrance
> abates the culmination of the annexation pending a review by the
> courts and places upon the municipality the burden of sustaining
> the annexation in the courts as provided by statute.  *City of
> Indianapolis v. Wynn*, 239 Ind. 567, 576, 157 N.E.2d 828, 833
> (1959).  At the remonstrance hearing, the burden is on the
> municipality to demonstrate its compliance with the annexation
> statutes.  *In re Matter of Annexation Ordinance No. X-07-91
> (Blackhawk Annexation)*, 645 N.E.2d 650, 652 (Ind. Ct. App.
> 1995), *trans. denied*.

*Fuehrer v. Storm (In re Remonstrance Appealing Ordinance Nos. 98-004, 98-005, 98-006, 98-007 and 98-008, of Town of Lizton)*, 769 N.E.2d 622, 634 (Ind. Ct. App. 2002).

### Standard of Review

The standard of appellate review for Trial Rule 12(B)(1) motions to dismiss is a function of what occurred in the trial court.  *GKN Co. v. Magness*, 744 N.E.2d 397, 401 (Ind. 2001).  If the facts before the trial court are not in dispute, then the question of subject matter jurisdiction is purely one of law.  *Id.*  Under those circumstances no deference is afforded the trial court's conclusion because "appellate courts independently, and without the slightest deference to trial court determinations, evaluate those issues they deem to be questions of law." *Id.* (quoting *Bader v. Johnson*, 732 N.E.2d 1212, 1216 (Ind. 2000)).  Thus, we review de novo a trial court's ruling on a motion to dismiss under Trial Rule 12(B)(1) where, as here, the facts before the trial court are undisputed.  *Id.*  As a general proposition, the party challenging subject matter jurisdiction carries the burden of establishing that jurisdiction does not exist.  *Id.* at 404.

## Subject Matter Jurisdiction

[8]     Before we turn to the substantive arguments raised on appeal, we must first address the trial court's conclusion that it lacked subject matter jurisdiction over FABA's remonstrance petition.  The question of subject matter jurisdiction entails a determination of whether a court has jurisdiction over the general class of actions to which a particular case belongs.  *Troxel v. Troxel*, 737 N.E.2d 745, 749 (Ind. 2000).  The statute at issue in this appeal is Indiana Code Section 36-4-3-11, which provides in relevant part as follows:

> (a) Except as provided in section 5.1(i) of this chapter and subsections (d) and (e), whenever territory is annexed by a municipality under this chapter, *the annexation may be appealed by filing with the circuit or superior court of a county in which the annexed territory is located* a written remonstrance signed by:
>
>> (1) at least sixty-five percent (65%) of the owners of land in the annexed territory; or
>>
>> (2) the owners of more than seventy-five percent (75%) in assessed valuation of the land in the annexed territory.
>
> The remonstrance must be filed within ninety (90) days after the publication of the annexation ordinance under section 7 of this chapter, must be accompanied by a copy of that ordinance, and must state the reason why the annexation should not take place.
>
> (b) On receipt of the remonstrance, the court shall determine whether the remonstrance has the necessary signatures. . . .

(Emphasis added).  Because the statute expressly provides that a party may file a remonstrance petition "with the circuit or superior court of a county in which the annexed territory is located," there is simply no question that the trial court here has subject matter jurisdiction over FABA's petition.  *Id.*  Still, this court has previously held that a Trial Rule 12(B)(1) motion to dismiss for lack of subject matter jurisdiction is a proper vehicle to challenge a remonstrance petition under Indiana Code Section 36-4-3-11.  As we discuss below, however, we have revisited and reviewed that line of case law and hold otherwise here.

[9]     As we explained in *City of Kokomo ex. rel. Goodnight v. Pogue*, 940 N.E.2d 833, 836 (Ind. Ct. App. 2010),

> [i]n the past, we referred to the failure of a remonstrance petition to contain *the required number of signatures* as depriving a trial court of subject matter jurisdiction.  *See Sons v. City of Crown Point*, 691 N.E.2d 1237, 1239 (Ind. Ct. App. 1998).  In recent years, our supreme court has clarified the concept of subject matter jurisdiction, while discarding the phrase "jurisdiction over the case."  *K.S. v. State*, 849 N.E.2d 538, 540 (Ind. 2006). Specifically, "[s]ubject matter jurisdiction is the power to hear and determine cases of the general class to which any particular proceeding belongs."  *Id.*  In light of *K.S.*, we have rejected *Sons* and held, "A more accurate portrayal of Ind. Code § 36-4-3-11(a) is that it provides the procedural prerequisites to the trial court's exercise of subject matter jurisdiction over remonstrance proceedings."  [*Herdt v. City of Jeffersonville (In re Petition to Annex Approximately 7,806 Acres of Real Estate into City of Jeffersonville)*], 891 N.E.2d 1157, 1161 (Ind. Ct. App. 2008), *trans. denied.*

(Emphasis added).

[10]     Our case law post-*K.S.* addressed some of the inconsistencies regarding issues of subject matter jurisdiction. In *Herdt*, the case we relied on in *City of Kokomo*, this court attempted to clarify the question of a trial court's subject matter jurisdiction over remonstrance proceedings. In *Herdt*, the City of Jeffersonville had filed a Trial Rule 12(B)(1) motion alleging that a remonstrance petition was not timely filed,[6] and the trial court granted that motion. 891 N.E.2d at 1160. On appeal, we acknowledged the distinction between subject matter jurisdiction and "jurisdiction over the case" and concluded that

> "[j]urisdiction over the case" refers rather to various procedural prerequisites to the exercise of subject matter jurisdiction. The issue of a party's failure to satisfy such procedural prerequisites is properly raised by means of a motion under Ind. Trial Rule 12(B)(1) for lack of jurisdiction or 12(B)(6) for failure to state a claim, depending on whether the claimed defect is apparent on the face of the complaint.

*Id.* (citing *Packard v. Shoopman*, 852 N.E.2d 927, 930-31 (Ind. 2006)). Thus, in *Herdt*, we held that the City of Jeffersonville correctly brought its challenge to the timeliness of the remonstrance petition as a Trial Rule 12(B)(1) motion to dismiss. *Id.*

[11]     But here we revisit our holding in *Herdt*, where we relied on our supreme court's opinion in *Packard*. In *Packard*, a township assessor challenged the

---

[6] In *Herdt*, the remonstrators submitted the signatures supporting the petition after the ninety-day statutory deadline had passed.

timeliness of a petition for judicial review in the Indiana Tax Court. The assessor claimed that, because the petition had not been timely filed, the Tax Court lacked subject matter jurisdiction to hear the case. At issue was whether the assessor's claim was timely asserted, or whether it was waived for being untimely. In addressing this argument, our supreme court held in relevant part as follows:

> The statutory provision for timely filing in the Tax Court found in Indiana Code section 33-26-6-2 predates our decision in *K.S.* and was enacted at a time when Indiana courts commonly used the phrase "jurisdiction over the particular case" to refer to various procedural prerequisites to the exercise of subject matter jurisdiction. *We conclude that when section 33-26-6-2 was passed, the General Assembly used "jurisdiction" to refer to the now abolished "jurisdiction over the particular case," i.e. procedural prerequisites that can be waived or procedurally defaulted if not timely raised.* As we held in *Wayne County Property Tax Assessment Board of Appeals v. United Ancient Order of Druids-Grove #29*, 847 N.E.2d 924, 926 (Ind. 2006), a petitioner's failure to file the administrative record in the Tax Court within the time required does not deprive the Tax Court of subject matter jurisdiction over the petitioner's appeal. We explained:

>> The timing of filing the agency record implicates neither the subject matter jurisdiction of the Tax Court nor personal jurisdiction over the parties. *Rather, it is jurisdictional only in the sense that it is a statutory prerequisite to the docketing of an appeal in the Tax Court. That issue is properly raised by means of a motion under Rule 12(B)(1) for lack of jurisdiction or 12(B)(6) for failure to state a claim, depending on whether the claimed defect is apparent on the face of the petition.*

*Druids*, 847 N.E.2d at 926. The same applies to the filing of a petition for review of an [Indiana Board of Tax Review] determination.

*We also acknowledge that statutory "jurisdictional" requirements in other statutes may require a different result[] but conclude that this turns on the nature of the court and the particular statutory language.*

*Id.* at 930-31 (emphases added). In other words, where a statute defines certain "jurisdictional" requirements, procedural challenges pursuant to those defined requirements may be brought under Trial Rule 12(B)(1) or 12(B)(6).

[12] In this case, however, because the language of the applicable statute is much different than that of the statute discussed in *Packard*, the reasoning in *Packard* is inapposite. The statute addressed in *Packard*, Indiana Code Section 33-26-6-2, provides in relevant part that, "[i]f a taxpayer fails to comply with any statutory requirement for the initiation of an original tax appeal, the tax court *does not have jurisdiction to hear the appeal*." (Emphasis added). In contrast, Indiana Code Section 36-4-3-11 does not include *any* prerequisite to the court's exercise of jurisdiction over the filing of a remonstrance petition. Rather, Section 36-4-3-11 expressly provides that a remonstrance petition may be filed with "the circuit or superior court of a county in which the annexed territory is located[.]" And that court has the authority to "determine whether the remonstrance has the necessary signatures." I.C. § 36-4-3-11(b). If the trial court determines that the remonstrance is sufficient "on its face," *see, e.g., In re Petition in Opposition to Annexation Ordinance F-2008-15*, 955 N.E.2d 769, 780 (Ind. Ct. App. 2011), *trans. denied*, it must set the matter for a hearing on the merits. I.C. § 36-4-3-11(c).

We hold that nothing in the reasoning of *Packard* supports its application to a challenge to the sufficiency of a remonstrance petition under Indiana Code Section 36-4-3-11.

[13]     Accordingly, we decline to follow *Herdt*, and we hold that challenges to the sufficiency of a remonstrance petition under Indiana Code Section 36-4-3-11 are not properly raised by a Trial Rule 12(B)(1) motion. While *Herdt*, like *Packard*, involved a procedural challenge to the timeliness of a filing, the similarities between those two cases end there. In *Packard*, again, the statute at issue expressly stated that the tax court's "jurisdiction" depended on a taxpayer's compliance with all statutory requirements for the initiation of an original tax appeal. 852 N.E.2d at 929. Our supreme court observed that the proper filing of the administrative record was "a statutory prerequisite to the docketing of an appeal in the Tax Court." *Id.* at 930 (quoting *Druids*, 847 N.E.2d at 926). And the court held that, in such circumstances, a challenge regarding whether those statutory prerequisites had been satisfied may be brought by either a Trial Rule 12(B)(1) or 12(B)(6) motion. *Id.* at 931.

[14]     But *Herdt* disregards the full context of our supreme court's analysis in *Packard*. Again, Indiana Code Section 36-4-3-11 does not include any prerequisite to the court's exercise of jurisdiction over the filing of a remonstrance petition. And not only does nothing in Section 36-4-3-11 indicate that the legislature created statutory procedural prerequisites to the filing of a remonstrance petition, but the express language of the statute also demonstrates that the legislature

intended not to create such a barrier. We decline to extend the reasoning in *Packard* to a challenge under Indiana Code Section 36-4-3-11.

[15] For the same reasons, we also disagree with this court's opinion in *City of Kokomo*, which relied on *Herdt* to hold that the city had properly challenged the validity of signatures to a remonstrance petition in a 12(B)(1) motion to dismiss for lack of subject matter jurisdiction. In *City of Kokomo*, the city alleged that some of the landowners who had submitted signatures in support of a remonstrance petition had waived their ability to challenge the city's annexation. Thus, in that case, as in the instant case, the city challenged the validity of some of the signatures to the remonstrance petition. Again, we hold that a Trial Rule 12(B)(1) motion is not the proper vehicle to bring a challenge to a remonstrance petition under Indiana Code Section 36-4-3-11.[7]

[16] In sum, a trial court has subject matter jurisdiction to determine whether a remonstrance petition is facially sufficient under Indiana Code Section 36-4-3-11. A party seeking to challenge a remonstrance petition under that statute may not move to dismiss the petition under Trial Rule 12(B)(1). Thus, here, the trial

---

[7] We also disagree with this court's holding in *In re Petition in Opposition to Annexation Ordinance F-2008-15*, 955 N.E.2d 769 (Ind. Ct. App. 2011), *trans. denied*, where we upheld the trial court's dismissal of a remonstrance petition under Trial Rule 12(B)(1) for failing to include the minimum number of signatures on its face. Such a dismissal could be appropriate under Trial Rule 12(B)(6). *See* I.C. § 36-4-3-11(b).

court erred when it dismissed FABA's remonstrance petition under Trial Rule 12(B)(1).[8]

### *Interpreting Indiana Code Section 36-4-3-11*

[17]    Because the issues raised by the parties in their briefs on appeal are likely to recur on remand, we address them here.  On appeal, the parties proffer competing interpretations of Indiana Code Section 36-4-3-11.  Statutory interpretation is a function for the courts, and our goal in statutory interpretation is to determine, give effect to, and implement the intent of the legislature as expressed in the plain language of its statutes.  *State v. Prater*, 922 N.E.2d 746, 749 (Ind. Ct. App. 2010), *trans. denied*.  "The first rule of statutory construction is that '[w]ords and phrases shall be taken in their plain, or ordinary and usual, sense.'"  *Id.* (quoting Ind. Code § 1-1-4-1(1)) (alteration original).  Further, courts may not "engraft new words" onto a statute or add restrictions where none exist.  *Kitchell v. Franklin*, 997 N.E.2d 1020, 1026 (Ind. 2013).

[18]    Statutory interpretation is a question of law and is reviewed de novo, or without deference to the trial court's interpretation.  *Curley v. Lake Cnty. Bd. of Elections &*

---

[8] We reject Brownsburg's contention that the remonstrance petition is deficient on its face.  The trial court did not rule on Brownsburg's motion to dismiss for failure to state a claim upon which relief can be granted under Trial Rule 12(B)(6), but we note that FABA's remonstrance petition is clearly sufficient under that rule. In particular, the petition includes the signatures of at least sixty-five percent of the landowners in the annexed territory; was filed within ninety days after the ordinance was published; was accompanied by a copy of the ordinance; and states the reason why the annexation should not take place.  *See* I.C. § 36-4-3-11(a).

*Registration*, 896 N.E.2d 24, 34 (Ind. Ct. App. 2008), *trans. denied*. "When a statute has not previously been construed, our interpretation is controlled by the express language of the statute and the rules of statutory construction." *Prater*, 922 N.E.2d at 748. "If a statute is unambiguous, that is, susceptible to but one meaning, we must give the statute its clear and plain meaning." *Curley*, 896 N.E.2d at 34 (quotations omitted). "If a statute is susceptible to multiple interpretations, we must try to ascertain the legislature's intent and interpret the statute so as to effectuate that intent." *Id.* (quotation omitted). "We review the statute as a whole and presume the legislature intended logical application of the language used in the statute, so as to avoid unjust or absurd results." *Prater*, 922 N.E.2d at 748. "[W]e must consider not only what the statute says but what it does not say." *Curley*, 896 N.E.2d at 37. In other words, "we are obliged to suppose that the General Assembly chose the language it did for a reason." *Prater*, 922 N.E.2d at 750.

[19]    Again, Indiana Code Section 36-4-3-11 provides in relevant part as follows:

> (a) Except as provided in section 5.1(i) of this chapter and subsections (d) and (e), whenever territory is annexed by a municipality under this chapter, the annexation may be appealed by filing with the circuit or superior court of a county in which the annexed territory is located a written remonstrance signed by:
>
>> (1) at least sixty-five percent (65%) of the owners of land in the annexed territory; or
>>
>> (2) the owners of more than seventy-five percent (75%) in assessed valuation of the land in the annexed territory.

The remonstrance must be filed within ninety (90) days after the publication of the annexation ordinance under section 7 of this chapter, must be accompanied by a copy of that ordinance, and must state the reason why the annexation should not take place.

(b) On receipt of the remonstrance, the court shall determine whether the remonstrance has the necessary signatures. In determining the total number of landowners of the annexed territory and whether signers of the remonstrance are landowners, the names appearing on the tax duplicate for that territory constitute prima facie evidence of ownership. Only one (1) person having an interest in each single property, as evidenced by the tax duplicate, is considered a landowner for purposes of this section.

### *Dates of Signatures*

FABA contends that the trial court erred when it concluded that FABA "failed to attach signatures sufficient to vote 65% percent of the parcels in the annexed territory in favor of a remonstrance challenging the Town's adopted annexation ordinance." Appellants' App. at 11. In support of that conclusion, the trial court stated in relevant part as follows:

5. With respect to the 65% landowner opposition requirement, our Supreme Court has said that this requirement must be "understood as a testing of landowner sentiment after the rest of the process has run its course." *City of Carmel v. Certain Sw. Clay Twp. Annexation Territory Landowners*, 868 N.E.2d 793, 800 (Ind. 2007).

6. The statutory scheme sets out a process that a municipality must follow before it may even adopt an annexation ordinance. That process includes formal 60-day notice to property owners, the opportunity for public input during a public hearing, and a 30-day waiting period after the public hearing. I[nd].[]C[ode §]

36-4-3-2.1(b) and (c), and -2.2.  Following the Supreme Court's direction in the *City of Carmel* case, the Court must accept that the 65% signature requirement represents a testing of landowner sentiment after this statutorily required process has run its course.

7.  Moreover, the plain language of the statute provides that the remonstrance "must be accompanied" by a copy of the published ordinance, I.C. [§] 36-4-3-11(a), indicating that the written remonstrance must be signed *after* the ordinance is adopted.

8.  *The parties do not dispute that Remonstrators submitted more than 500 petitions with signatures that were dated before the ordinance was ever adopted, including more than 200 with signatures that were dated before the Town and the public had the benefit of public input during the May 16, 2013[,] public hearing.  These signatures do not reflect an accurate representation of landowner sentiment after the statutory process had run its course, as our Supreme Court has directed*.

9.  The failure to obtain a sufficient percentage of particular parcel owners results in a failure to meet the subject matter jurisdiction requirement for the court to consider the merits of the annexation.

*Id.* at 11-12 (some emphasis added).

On appeal, FABA correctly points out that Indiana Code Section 36-4-3-11 includes no provision regarding when signatures in support of a remonstrance petition shall be obtained.  The statute does not require, as Brownsburg contends, that signatures be gathered only after an annexation ordinance has been adopted.  Indeed, as Brownsburg concedes, there is no requirement that the signatures be dated at all.  Accordingly, FABA maintains, each of the

signatures obtained in support of the remonstrance petition is valid, regardless of the dates on which they were executed.

[22] But Brownsburg contends that, "taken as a whole, the most natural and plain reading of the statute leads us to the conclusion that remonstrance petitions are invalid if they are signed before the municipality adopts the ordinance being remonstrated, regardless of whether the signer included a date on the face of the petition." Appellees' Br. at 18. In support of that contention, Brownsburg reads the statute to require that, at the time the landowner signs the remonstrance petition, it must include a copy of the ordinance, which, Brownsburg contends, does not exist until it is adopted. But FABA counters that Brownsburg "made no substantive changes to [the ordinance] from March 7[, when it was introduced,] through July 11, 2013[, when it was adopted]." Reply Br. at 4. Thus, whether the landowners signed the remonstrance petition after the ordinance was introduced or after it was adopted, there is no question that the landowners were expressing their opposition to the same ordinance.

[23] Moreover, while the statute requires that a copy of the ordinance accompany the remonstrance petition *when it is filed*, the statute does not require that the form of petition used to obtain the landowners' signatures be accompanied by a copy of the ordinance when the petition is signed. Brownsburg's contention is really a request that we re-write the statute. There is nothing in the statutory language that requires that the annexation ordinance be attached to the petition when it is signed. We will not read that requirement into the statute.

Next, Brownsburg contends that, if a landowner signs the remonstrance petition before the ordinance is adopted, the landowner's reasons for opposing annexation "are speculative." Appellees' Br. at 19. Brownsburg maintains that "the remonstrator must wait until the municipality adopts an annexation ordinance in order to state the reasons why the annexation should not take place . . . ." *Id.* But, again, the statute includes no such requirement. And our reading of the plain language of the statute indicates that, while the remonstrance petition *at the time of filing* must state the reasons why annexation should not take place, there is no requirement that a landowner wait to read the ordinance, as adopted, before signing the remonstrance petition. In any event, again, here there were no substantive changes to the ordinance between the time it was introduced and adopted, and Brownsburg does not challenge the sufficiency of the reasons stated in support of the remonstrance petition. But it may well be that the remonstrators simply oppose annexation in any form, and they have the right to oppose annexation regardless of the terms and conditions set out in the ordinance.

Brownsburg also contends that the "statutory scheme [is] designed to facilitate dialogue between the municipality and residents throughout the annexation process" and that that process is "undermined if the Court allows remonstrance petitions to be collected and signed before that statutory process has run its course." Appellees' Br. at 19. In particular, Brownsburg points out that, at least sixty days after a municipality introduces an annexation ordinance, it shall hold a public hearing. Ind. Code § 36-4-3-2.1. And the municipality must wait

at least thirty days after the public hearing to adopt the ordinance. *Id.* In essence, Brownsburg asserts that a landowner cannot make an informed decision regarding annexation before an ordinance has been adopted and, therefore, a landowner's signature in support of a remonstrance petition made before adoption is invalid.

[26] In support of that contention, Brownsburg cites to our supreme court's opinion in *City of Carmel*, 868 N.E.2d at 793.[9] In *City of Carmel*, the city "annexed territory in the southwest corner of Hamilton County representing roughly 3,400 parcels, and remonstrators contested the annexation. The organization leading the remonstrance negotiated favorable terms with the city and decided to settle. In a referendum among landowners, a majority voted in favor of settling." *Id.* at 795. Following a hearing on the merits of the remonstrance petition pursuant to Indiana Code Section 36-4-3-12, the trial court concluded, in relevant part, that the remonstrators had defeated the annexation because at least sixty-five percent of the affected landowners opposed the annexation "when they signed on for the initial remonstrance." *Id.* at 800.

[27] But our supreme court observed that the statute at issue in *City of Carmel*, Indiana Code Section 36-4-3-13(e)(2)(D)(1), which, like subsection 11(a), requires evidence that at least sixty-five percent of landowners in the annexed territory opposes annexation, "complements the rest of the statutory

---

[9] Brownsburg also cites to case law from other jurisdictions, which we do not find persuasive.

arrangement only if understood as a testing of landowner sentiment after the rest of the process has run its course." *Id.* The court observed that "[t]he appropriate consideration should have been whether 65% of the landowners continued to oppose the annexation [at the time of the hearing on the merits of the remonstrance petition]." *Id.* And the court held that, "[t]o defeat an otherwise valid ordinance, all conditions of section 13(e)(2) must be met. They were not." *Id.* at 801.

[28]  Brownsburg's reliance on *City of Carmel* is misplaced. Brownsburg ignores the fact that *City of Carmel* does not address the statute in this case, Indiana Code Section 36-4-3-11, which governs the requirements for proving that a remonstrance petition is "facially sufficient" to warrant a hearing on the merits. *See, e.g., Herdt*, 891 N.E.2d at 1162. *City of Carmel* addresses only Indiana Code Section 36-4-3-13, which governs what the remonstrators must prove at the hearing on the merits of the remonstrance petition. In *City of Carmel*, our supreme court held that a hearing *on the merits* of a remonstrance petition requires that the trial court consider whether sixty-five percent of landowners who signed a petition continue to oppose annexation *at the time of that hearing*. 868 N.E.2d at 800. But here, no hearing on the merits of FABA's remonstrance petition under Section 13 has yet been held, and the remonstrance proceeding has not yet "run its course." Indeed, no hearing to determine whether a remonstrance petition is facially sufficient under Section 11 is even required. Our supreme court's holding in *City of Carmel* is inapposite here.

[29]     While we agree that landowners might be well-advised to wait until an annexation ordinance is adopted before deciding whether to sign a remonstrance petition, the relevant statutes do not require that the signatures in support of a remonstrance be affixed at any particular time before the petition is filed. And here, where there is no material difference between the annexation ordinance as introduced and as adopted, and the stated reasons for the opposition to the annexation are not challenged as insufficient, there is no reason to question the landowners' decisions to sign the remonstrance petition before the adoption of the ordinance. As happened in *City of Carmel*, if Brownsburg and the remonstrators were to negotiate a settlement agreement before a hearing on the merits of the petition is concluded, the remonstrance would be defeated if a sufficient number of remonstrators had been convinced to change their minds. Finally, again, signatures to a remonstrance petition need not be dated. Thus, had the remonstrators in this case not dated their signatures, no challenge to their timeliness would have been brought. The dates indicated are mere surplusage and, as such, are irrelevant.

[30]     In sum, Indiana Code Section 36-4-3-11(a) provides in relevant part that a remonstrance petition must include the signatures of at least sixty-five percent of the landowners in the annexed territory; must be filed within ninety days after the ordinance is published; must be accompanied by a copy of the ordinance; and must state the reason why the annexation should not take place. The statute is silent regarding the timing of the signatures, other than the requirement that the signatures be included with the remonstrance petition

when filed, which must occur within ninety days after the ordinance is published. Considering the plain and ordinary meaning of the language used in the statute, we hold that the signatures in support of FABA's remonstrance petition were timely.

### *Multiple Owners of Parcels*

Brownsburg also contends that FABA's remonstrance petition is deficient because it did not include the signatures of every owner of parcels owned by more than one person. Brownsburg maintains that, "[u]nder the Indiana Supreme Court's one-parcel-one-vote construction of I.C. § 36-4-3-11(a)[ in *Arnold v. City of Terre Haute*, 725 N.E.2d 869, 870 (Ind. 2000)],"[10] we "should not consider the petitions signed by fewer than all of [a] parcel's owners." Appellees' Br. at 29-30. We cannot agree.

In support of its contention, Brownsburg cites to this court's opinion in *City of Ft. Wayne v. Certain Northeast Annexation Area Landowners*, 564 N.E.2d 297 (Ind. Ct. App. 1990), *trans. denied*. In that case, we interpreted Indiana Code Section 36-4-3-11(b) to mean that "multiple owners of a single parcel are to be counted as only one owner," and we held that "[a] single owner of multiple parcels, on the other hand, counts as an owner for each parcel[.]" *Id.* at 298. Brownsburg

---

[10] In *Arnold*, our supreme court vacated this court's opinion where we had held that an owner of multiple parcels should be considered as an owner of one parcel for purposes of determining whether there is an adequate number of remonstrators to invoke the jurisdiction of the courts. 725 N.E.2d at 870. Our supreme court held that Indiana Code Section 36-4-3-11(b) "suggests a regime better described as 'one-parcel-one-vote' than as 'one-owner-one-vote.'" *Id.*

asserts that, "[b]y implication, if fewer than all of the multiple owners signs [sic] a petition, then fewer than 'one owner' has signed the petition, and the petition fails."[11]  Appellees' Br. at 30.  We cannot agree.

[33]  Indiana Code Section 36-4-3-11(b) expressly provides that "[o]nly one (1) person having an interest in each single property, as evidenced by the tax duplicate, is considered a landowner for purposes of this section."  That provision speaks for itself.  *Only one owner*, not more than one owner, of a co-owned property can be considered a landowner for purposes of the statute.[12]  Here, in support of the remonstrance petition, FABA obtained the signatures of at least one owner[13] of 808 out of the 1,193 parcels to be annexed, or sixty-seven percent of landowners, and that was sufficient under the statute.[14]

## *Mootness*

[34]  Finally, at the hearing on its motion to dismiss, Brownsburg argued that "any remonstrance directed to a proposed ordinance that was amended before adoption would be a moot remonstrance, because the outdated version of the

---

[11]  Again, Brownsburg cites to case law from other jurisdictions in support of its contention on this issue, but we do not find those cases persuasive.

[12]  We need not address how to resolve a dispute should multiple owners disagree on whether to support or oppose a proposed annexation.  That issue is not before us, and we leave it for another day.

[13]  Where more than one landowner signed per parcel in support of the remonstrance petition, only one signature was required, and the other signature(s) are superfluous.

[14]  The parties dispute whether one landowner who initially signed the remonstrance petition has since revoked his support for the remonstrance.  But that dispute does not change the fact that FABA has obtained the support of at least sixty-five percent of affected landowners, so we need not address that question here.

proposed ordinance was no longer under consideration." Appellees' Br. at 27. Brownsburg asserts that "the outdated version of the proposed Ordinance, to which many of the petitions here were directed, had no legal existence or effect until the Third Reading and final vote to adopt the Ordinance on July 11, 2013." *Id.* at 28. Thus, Brownsburg contends that FABA's petition is moot because the majority of the remonstrators signed the petition prior to the adoption of the final version of the ordinance. We cannot agree.

[35] In support of its contention on this issue, Brownsburg cites to *Vesenmeir v. City of Aurora*, 232 Ind. 628, 115 N.E.2d 734 (1953), and *Matter of City of Fort Wayne*, 178 Ind. App. 228, 381 N.E.2d 1093 (1978). As Brownsburg states, "[t]hese cases both held that the remonstrances [at issue] were moot because they were directed to an annexation ordinance that the municipality later repealed and superseded with a new ordinance." Appellees' Br. at 27. Brownsburg acknowledges that, in the instant case, it neither repealed an ordinance nor "introduced a completely new ordinance" that was ultimately adopted. *Id.* at 28. Instead, Brownsburg asserts that it "has consistently maintained that it had not yet passed *any* ordinance until July 11, 2013," and

> any remonstrance petitions that were directed to prior versions of the as-of-yet-unadopted ordinance were premature and should be deemed moot and not be counted, just like the petitions in *City of Aurora* and *City of Fort Wayne* were deemed moot because they were directed to an outdated ordinance, albeit by repeal and a new ordinance rather than by amendment before final adoption.

*Id.*

[36] We reject Brownsburg's contention on this issue. First, again, Indiana Code Section 36-4-3-11 does not require that signatures in support of a remonstrance petition be obtained only after an annexation ordinance has been adopted. Second, the amendments to the ordinance between the time it was introduced and the time it was adopted did not substantively change the ordinance, so the amendments are not akin to the repeal and replacement of an ordinance. We are not persuaded by Brownsburg's attempt to analogize this case to *City of Aurora* and *City of Fort Wayne*. FABA's remonstrance petition is not moot.

## *Conclusion*

[37] The trial court had subject matter jurisdiction to determine the sufficiency of FABA's remonstrance petition under Indiana Code Section 36-4-3-11. We hold that a Trial Rule 12(B)(1) motion is not a proper vehicle for challenging the sufficiency of a remonstrance petition under Section 36-4-3-11, and the trial court erred when it dismissed FABA's petition for lack of subject matter jurisdiction. The remonstrance petition is sufficient on its face, and we reverse and remand for a hearing on the merits. On remand, should Brownsburg challenge the validity of the signatures in support of FABA's petition at the merits hearing, we hold that: (1) any otherwise valid signatures of owners obtained prior to publication of the annexation ordinance are to be counted;

and (2) only one owner need have signed on behalf of each parcel.[15]  Finally,

FABA's remonstrance petition is not moot.

[38]  Reversed and remanded for further proceedings.


Baker, J., and Friedlander, J., concur.

---

[15] We note that the General Assembly has passed new legislation, effective July 1, 2015, that overhauls the annexation process in Indiana.  *See* S.B. 330, 119th Gen. Assemb., Reg. Sess. (Ind. 2015).  The most significant change is that, under a new statute, Indiana Code Section 36-4-3-11.3, an annexation ordinance is *void* if a remonstrance petition is signed by at least 65% of owners of land in the annexed territory or by the owners of at least 80% in assessed valuation of the land in the annexed territory.  Another new statute, Indiana Code Section 36-4-3-11.1(c), provides that, after a proposed annexation ordinance is published, the municipality must "give notice of the applicability of the remonstrance process" to affected landowners.  And Indiana Code Section 36-4-3-11.2(c)(1) provides that signatures in support of a remonstrance petition must be dated, and they must be dated no earlier than the date of the notice provided under Section 11.1.  Finally, the new statute provides that "[o]nly one (1) person having an interest in each single property as evidenced by the tax duplicate is considered an owner of property and may sign a remonstrance petition."  I.C. § 36-4-3-11.2(e)(2).